IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVA PEPAJ and SANDRA VALENCIA :<br>:<br>Plaintiffs, :<br>:<br>v. :<br>:<br>:<br>FOOD TEK, INC. d/b/a BLEU MARTINI :<br>and MEIR COHEN :<br>:<br>Defendants. : | <br><br>C.A. No.<br><br><br><br>**COMPLAINT**<br><br>(Jury Trial Demanded)<br><br> |

Plaintiffs EVA PEPAJ and SANDRA VALENCIA (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Complaint ("Complaint") against Defendants FOOD TEK, INC. d/b/a BLEU MARTINI and MEIR COHEN (collectively "Defendants") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Bleu Martini located in Philadelphia, Pennsylvania ("Bleu Martini" or the "Club").

2. As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Pennsylvania's statutory right of publicity, 42 Pa. Cons. Stat. § 8316; d) defamation; and e) various common law torts,

- 1 -

including conversion.

3. In addition to the actual, punitive, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6. According to publicly available records, defendant FOOD TEK, INC. is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at 24 S. Second Street, Philadelphia, PA 19106, FOOD TEK, INC. operates as Bleu Martini, which is located at 24 S. Second Street, Philadelphia, PA 19106.

7. Venue is proper in the United States District Court for the Eastern District of Pennsylvania because Philadelphia, Pennsylvania is Defendants' principal place of business.

8. A significant portion of the alleged causes of action arose and accrued in Philadelphia, Pennsylvania and the center of gravity for a significant portion of all relevant events alleged in this Complaint is predominately located in Philadelphia, Pennsylvania.

## PARTIES

*Plaintiffs*

9. Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

10. Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Medelin, Columbia.

***Defendants***

11. According to publicly available records, defendant FOOD TEK, INC. is formed under the laws of the state of Pennsylvania. During times relevant to this action, FOOD TEK, INC. operated Bleu Martini in Philadelphia, Pennsylvania.

12. According to publicly available records, and upon information and belief, MEIR COHEN, in his capacity President of FOOD TEK, INC. maintained operational control over Bleu Martini, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

13. As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

14. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

15. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Bleu Martini.

16. In the case of every Plaintiff, such appearance was false.

17. Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

18. Further, in certain cases Defendants misappropriated Plaintiffs' (or their licensees') advertising ideas to promote their club to the public.

***Plaintiffs' Backgrounds and Careers***

19. Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign.

20. That we know of, Pepaj is depicted in the photos in Exhibit "A" to promote Bleu Martini on its Facebook page. This Images were intentionally altered to make it appear that Pepaj was either an employee working at Bleu Martini, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

21. Pepaj has never been employed at Bleu Martini, has never been hired to endorse Bleu Martini, has never been otherwise associated or affiliated with Bleu Martini, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

22. Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Besame Lingerie. She currently has over 152 thousand

Instagram followers and over 75.6 thousand Twitter followers.

23. That we know of, Valencia is depicted in the photo in Exhibit "B" to promote Bleu Martini on its Facebook page. This Image was intentionally altered to make it appear that Valencia was either an employee working at Bleu Martini that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

24. Valencia has never been employed at Bleu Martini, has never been hired to endorse Bleu Martini, has never been otherwise associated or affiliated with Bleu Martini, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

25. Upon information and belief, Defendants operated, during the relevant time period, Bleu Martini, where they engaged in the business of selling alcohol and food in a sexually-charged atmosphere.

26. Upon information and belief, and in furtherance of their promotion of Bleu Martini, Defendants' own, operate and control Bleu Martini's social media accounts, including its Facebook account.

27. Defendants used Bleu Martini's Facebook accounts to promote Bleu Martini, and to attract patrons thereto.

28. Defendants did this for their own commercial and financial benefit.

29. Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as an entertainer working at Bleu Martini, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

30. Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Bleu Martini to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

31. As Defendants were at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Bleu Martini and at no point have any of the Plaintiffs ever endorsed Bleu Martini, or otherwise been affiliated or associated with Bleu Martini.

32. All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

33. As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

34. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

35. The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the

"term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Misappropriation of Plaintiffs' Images*

36. As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Bleu Martini by and through various marketing and promotional mediums including, without limitation, Bleu Martini's website, Twitter, Facebook, and Instagram.

37. Defendants showcased Plaintiffs' Images on Bleu Martini's social media pages to create the false impression that Plaintiffs worked at Bleu Martini, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

38. Defendants did so to attract clientele to Bleu Martini, promote Bleu Martini, and thereby generate revenue for Defendants.

39. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Bleu Martini.

40. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

41. In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

42. This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendants' use of Plaintiffs' Images is that they are entertainers, endorse a night club, or are otherwise associated or affiliated with a night club.

43. At no point were any of the Plaintiffs ever affiliated with Bleu Martini, or Defendants.

44. Each of Plaintiffs' Images was used without her consent.

45. At no point was any Plaintiff ever contacted by any Defendants, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

46. No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

47. No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including Bleu Martini's Facebook account.

48. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

49. Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

50. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

51. The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

52. As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Bleu Martini, or agreed to appear in Bleu Martini's advertisements.

53. Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

54. Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Bleu Martini.

55. Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

56. Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

57. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

58. Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

59. Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)**

60. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

61. The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

62. Defendants used Plaintiffs Images in order, inter alia, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Bleu Martini, or worked at, sponsored, or approved of Bleu Martini's goods, services or commercial activities.

63. This was done to promote and attract clientele to Bleu Martini, and thereby generate revenue for the Defendants.

64. Thus, this was done in furtherance of Defendants' commercial benefit.

65. Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Bleu Martini, nor worked at, sponsored, or approved of Bleu Martini's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Bleu Martini.

66. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

67. Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

68. Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Right of Privacy)

69. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

70. As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Pennsylvania law.

71. Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

72. Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Bleu Martini's website or related social media accounts as part of Defendants' advertising campaign.

73. At all relevant times, Bleu Martini's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

74. Bleu Martini's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

75. Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

76. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

77. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

78. Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Bleu Martini.

79. At no point did any Defendants ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

80. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

81. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

82. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FOURTH CAUSE OF ACTION**
**(Right of Publicity, Unauthorized Use of Name or Likeness: 42 Pa. Cons. Stat. § 8316)**

83. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

84. As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

85. Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

86. As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Bleu Martini advertising.

87. Defendants did so without any Plaintiff's consent, written or otherwise.

88. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

89. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

90. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

91. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

92. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Common Law Right of Publicity)**

93. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

94. As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

95. Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

96. As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Bleu Martini advertising.

97. Defendants did so without any Plaintiff's consent, written or otherwise.

98. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

99. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

100. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

101. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

102. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**SIXTH CAUSE OF ACTION**
**(Defamation)**

103. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

104. As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

105. Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

106. None of these representations were true.

107. In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were entertainers working at the Club, or endorsed the Club.

108. Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

109. In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

110. Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

111. Defendants' publication of Plaintiffs' Images constitutes defamation under Pennsylvania law because said publication falsely accuses Plaintiff of having acted in a manner – i.e., working as an employee of and/or endorsing a night club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

112. Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under Pennsylvania law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

113. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was an employee of and/or promoting as night club, an inference which Defendants' publication of the Images support.

114. Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under Pennsylvania law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to her.

115. Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SEVENTH CAUSE OF ACTION**
**(Negligence and *Respondeat Superior*)**

116. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

117. Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

118. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

119. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

120. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

121. Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

122. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

123. Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

124. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

125. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

126. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

127. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

128. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

129. Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

130. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

131. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either employees working at the Clubs, or endorsed the Clubs.

132. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

133. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

134. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

135. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

136. As such, Plaintiffs have been damaged in an amount to be determined at trial.

### TENTH CAUSE OF ACTION
### (Quantum Meruit)

137. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

138. Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

139. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

140. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

141. Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial, pursuant to CUPTA 42-110g(a);

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117; and

(e) For such other and further relief as the Court may deem just and proper.

|  |  |
|---|---|
| OF COUNSEL:<br>John V. Golaszewski, Esquire*<br>THE CASAS LAW FIRM, PC<br>1740 Broadway, 15th Floor<br>New York, New York<br>T: 646-872-3178<br>F: 855.220.9626<br>john@talentrights.law | /s/ Gerald B. Baldino, III<br>Gerald B. Baldino, III, Esquire<br>Attorney I.D. No. 326111<br>SACCHETTA & BALDINO<br>308 East Second Street<br>Media, PA 19063<br>P: (610) 891-9212<br>F: (610) 891-7190<br>gbaldino@sbattorney.com<br>*Attorney for Plaintiffs* |

Dated: December 18, 2023

*Pro Hac Vice Application Forthcoming